ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **KELVIN SANTIAGO MALDONADO**<br><br>Recurrido<br><br>v.<br><br>**VIC & MIKE ENTERPRISES, INC., VIC & MIKE AUTO**<br><br>Recurrente | KLRA202500277 | **REVISIÓN** procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm: **PON-2024-0005589**<br><br>Sobre: Resolución Administrativa |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y el Juez Sánchez Báez.[1]

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 26 de junio de 2025.

Comparece VIC & MIKE ENTERPRISES, INC. y VIC & MIKE AUTO (en conjunto, VIC & MIKE AUTO o parte recurrente) mediante *Revisión de Resolución Administrativa* y solicita que revoquemos la *Resolución* emitida el 28 de febrero de 2025 por el Departamento de Asuntos del Consumidor (DACo). Mediante dicho dictamen, el DACo ordenó a la parte recurrente saldar el balance del préstamo del vehículo Toyota Scion, propiedad del señor Kevin Santiago Maldonado (señor Maldonado Santiago o parte querellante), cuyo monto ascendía a $18,225.78. Además, le impuso el pago de seiscientos dólares ($600.00) en concepto de honorarios de abogado y un pago adicional de trescientos dólares ($300.00) por inconvenientes sufridos a favor del señor Santiago Maldonado.

Por los fundamentos que expresamos a continuación, confirmamos la *Resolución* recurrida.

---

[1] *Véase* Orden DJ 2024-062C, sobre enmienda a la orden de designación de Paneles en el Tribunal de Apelaciones. El juez Sánchez Báez sustituye a la jueza Monsita Rivera Marchand.

**I.**

Según surge del expediente, el caso de autos se originó el 16 de septiembre de 2024, cuando el señor Santiago Maldonado instó una *Querella* en contra de VIC & MIKE AUTO ante el DACo.

En esta, alegó que, el 1 de marzo de 2024, acudió al concesionario de autos VIC & MIKE AUTO pues estaba interesado en adquirir un vehículo. Manifestó que, tras los distintos términos ofrecidos para la compra de un vehículo, le comunicó a la vendedora su imposibilidad de adquirir un vehículo adicional y fue entonces cuando "le quitaron las llaves de su vehículo Scion Tc y se nega[ron] a dejarlo salir". Expresó que luego le ofrecieron varias alternativas, siendo una de ellas la venta de su vehículo a través del concesionario. Detalló que la misma consistía en que estos se quedaban con el auto para venderlo y que, una vez esto ocurriera lo llamarían para realizar el traspaso y saldo o, en el caso de que la venta demorara más de dos semanas, el *dealer* pagaría la cuenta de este hasta venderlo o la saldaría. Añadió que aceptó la oferta de comprar un auto y dejar su Toyota Scion, pero aseveró que en el establecimiento no le entregaron documento o recibo alguno sobre lo pactado. Posteriormente, alegó que, tras realizar varias gestiones requeridas por una empleada del concesionario, se le informó que su vehículo había sido vendido a una tercera persona. Lo anterior, sin realizar el traspaso de la titularidad del vehículo y de la cuenta al nuevo dueño. Por ello, reclamó ante el DACo que la venta de su vehículo no se realizó bajo los términos acordados y solicitó que se condenara a VIC & MIKE AUTO a pagar el saldo del financiamiento del vehículo que les entregó, como se obligó, en resarcimiento de los daños causados al entregar el vehículo a un tercero sin su consentimiento.

El 1 de octubre de 2024, se le remitió *Notificación de Querella* a VIC & MIKE AUTO. Así las cosas, el 4 de noviembre de 2024, se

notificó a las partes *Citación a Vista Administrativa* a celebrarse el 20 de noviembre de 2024, la cual luego fue pautada para el día 22 del mismo mes.

Desfilada la prueba documental y testifical en la vista administrativa, el 28 de febrero de 2025, notificada el 5 de marzo de 2025, el DACo dictó la *Resolución* recurrida, en la cual formuló las siguientes determinaciones de hechos:

1. El vehículo de motor comprado en el dealer querellado ha sido identificado como el vehículo KIA-modelo Soul, año 2022, que adquirió el señor Kevin J Santiago Maldonado del concesionario VIC & MIKE AUTO. FECHA: 1 de marzo de 2024.

2. Conforme a Orden de Compra el dealer vendedor es Vic & Mike Auto (VIC AND MIKE ENTERPRISES INC.) localizado en Cidra, Puerto Rico. La venta fue al precio de $27,750.00; Millaje: 13,504. FECHA: 1/marzo/2024. (vehículo comprado por el querellante: KIA SOUL 2022)

3. VIC & MIKE ENTERPRISES INC. es concesionario que hace negocios como VICK & MIKE AUTO con localidad en el barrio Beatriz carretera 1 Km 52.3 en el Municipio de Coamo, P.R.

4. El vehículo objeto de la controversia es un Toyota Scion, azul, año 2022 Tablilla JFK 741 Serie # JTKJF5C72FJ004779, que el querellante entregó en el dealer para su venta. Consta en expediente administrativo copia de la licencia del vehículo a nombre del querellante y la fecha de su vencimiento al 31 de julio de 2024.

5. La parte querellante Kevin J Santiago Maldonado mediante representante legal presentó extensa querella (16/sept/2024) ante DACO, Oficina Regional Ponce siendo notificada el 30 de septiembre de 2024.

   En la Querella se expuso (síntesis de querella) que el querellante vio en el dealer Vic & Mike Auto dos Jeep que le interesaron por lo que los visitó el 1 de marzo de 2024. Allí informó (Sra. Jeanmari Díaz) querer entregar en "trade-in" su vehículo SCION TC 2015 Tablilla JFX 741 serie # JTKJF5CF004779 el cual tiene deuda de financiamiento con CARIBE FEDERAL CREDIT UNION (cuenta # 239215); que le hicieron unas ofertas que no aceptó por ser muy altos para su presupuesto y que le quitaron las llaves de su vehículo SCION TC 2015 y se negaban a dejarlo salir del dealer. Que otra vendedora (Virmary Flores) le ofreció otra alternativa bajando el pago mensual en un vehículo KIA SOUL 2022 (vehículo que les compró el querellante) pero que no aceptaban en "trade

in" su vehículo-SCION TC 2022. Que la vendedora V. Flores le ofreció un servicio de venta mediante el cual se quedaban con su vehículo SCION TC 2022 para venderlo y que llamarían al querellante para el Traspaso y Saldo del Vehículo, que ello no tardaba de dos semanas, sino, el dealer pagaría la cuenta hasta venderlo o lo saldaban. Que la vendedora V. Flores le entregó las llaves al Sr. Marcos Reyes quien estacionó el vehículo en área en que exhiben los vehículos para la venta dentro de los predios del concesionario; Que no le entregaron documento relacionado al SCION TC 2022 ni Acuse de Recibo. Que compró la guagua KIA SOUL 2022. Que el 8 de marzo de 2024 el querellante se comunicó con la vendedora Flores pues consiguió el balance de cancelación del KIA SOUL 2022 y para conocer del estatus de la venta y esta le comunicó con Marcos Reyes. Que éste le dijo que habían vendido el carro que lo pondría en contacto con la persona que lo tenía para que le enviara los pagos todos los meses. Que eso no fue lo acordado. Que el querellante ha insistido con el Sr. Marcos Reyes para que se realice el traspaso que la persona a quien le vendieron el vehículo es de nombre Luis García, que este no tiene crédito y que se comprometió a continuar pagando la cuenta que está a nombre del querellante y eso no fue lo que se ofreció en la compraventa. Que le dieron el número de teléfono de esta persona; y ha aceptado esos pagos mensuales porque no puede pagar dos vehículos a la vez; que ha habido atraso en los pagos mensuales. Que reclamó de ello a Marcos Reyes quien le dice que vaya a la Policía y lo reporte robado: que le ha comunicado a Luis García (poseedor del vehículo) que le entregue el carro y éste indica que no lo devolverá sin que el dealer le devuelva el pronto y los pagos realizados; que el último mensaje recibido de Luis García le informó que le entregó el carro a su hermano José García, quien paga atrasado y eso le daña su crédito y que este se niega a hacer el traspaso. Que del dealer no le resuelven el problema y ha incumplido. Que no le entregaron los documentos de la compra del vehículo KIA SOUL 2022, ni de los términos y condiciones a pesar que los firmó y los ha solicitado. Se solicita que el dealer salde el contrato de financiamiento entre el querellante y Caribe Federal Credit Union, referente al vehículo Scion TC-2022; compensación por daños causados al querellante al entregar, el vehículo Scion TC-2022 a un tercero sin mediar consentimiento del querellante.

6. Conforme al testimonio del QUERELLANTE: Kevin J. Santiago Maldonado, se desprende que:

   a. Vio en la página de la red social de Facebook de VIC & Mike AUTO anuncio de dos JEEP, por lo que llamó al número de teléfono y tuvo cita para el 1 de marzo de 2024.
   b. Le atendió Jeanmarie Díaz, para los dos Jeep, resultó que el pago sería alto por lo que no procedió con la compraventa; dijo que no.

c. Que Jeanmarie Díaz insistió en que se llevara un vehículo y le ofreció el vehículo KIA SOUL 2022 (vehículo que terminó comprando).

d. Que había ido con su vehículo Toyota SCION 2022 para ofrecerlo en "trade-in" y le dijeron (vendedora Vilmarie Flores) que no podían cogerlo.

e. Que se quería ir y que Vilmarie Flores tenía la posesión de su vehículo SCION TC 2022.

f. Que Vilmarie Flores lo llevó a una oficina dentro del concesionario y estaba allí [Ángel] Samuel Ortega y ahí le ofrecieron el KIA SOUL 2022 para vendérselo. Que no lo cogió pues le preocupaba pagar dos carros y el SCION 2022 no lo cogían en "trade in".

g. Que [Ángel]  Samuel Ortega le ofreció que dejara su vehículo SCION 2022 para ellos venderlo y hacer el traspaso con quien lo comprara; que saldarían la deuda, que harían los pagos al banco. El pago mensual es de $397.17.

h. Que [Ángel] Samuel Ortega, trabaja de Gerente en Mayagüez y se quedó con la llave de su carro (SCION 2022).

i. Que Marcos Reyes trabaja en VIC & MIKE AUTO de Mayagüez como Gerente y lo sabe porque tenía puesta una camisa VIC & [Mike] Auto.

j. Que no le dieron, ni firmó documento alguno para el dealer quedarse con el vehículo (Scion 2022) y venderlo.

k. Que Vilmarie Flores le pidió el balance de cancelación, que ésta estaba en viaje (España) y por foto de WhatsApp se lo envió a Marcos Reyes, según le dijera la señora Flores.

l. Que el 8 de marzo de 2024 surge del mensaje de texto del querellante, la expresión "Tengo la carta" (ref. Balance de cancelación) y que lo envió y Marcos Reyes le dijo "envíamela". (Balance de cancelación a marzo 2024: $18,958.24)

m. Que luego de haber recibido el balance de cancelación le dicen que lo que quieren es el número de cuenta del préstamo del vehículo para mandar, hacer los pagos al banco.

n. Al 22 de noviembre de 2024 el balance de cancelación del préstamo de auto es de $18,225.78 dólares. Y a ese momento tiene tres (3) pagos en atraso. Consta Certificación de Balance de Cancelación- Caribe Federal Credit Union (239215 L18-$397.17 pagos mensuales).

o. Que Marcos Reyes le dijo que [Ángel] Ortega vendió el vehículo SCION 2022 a otra persona;

que nunca lo llamaron para el traspaso del vehículo, y no podía pagar dos vehículos.

p. Que se supone hicieran el traspaso y le saldaran la cuenta.

q. Que Marcos Reyes le dijo que [Ángel] Ortega le vendió el vehículo a persona de nombre Luis García y que éste se lo dio al hermano "José García" y solo le dieron el número de teléfono, como la persona que ahora tiene el carro. Que le escribió a Luis García, que éste no quiso seguir pagando el vehículo y se lo dio a su hermano José García.

r. En Vic & Mike llamaba a Marcos Reyes para que le hicieran el traspaso y le contestó que tenía que esperar seis (6) meses para poder hacer el traspaso. Que llamó muchas veces para saber del estatus del vehículo. Le solicitaba hacer el traspaso pues no podía pagar dos vehículos.

s. Solo una vez le rembolsaron una (1) sola vez el pago con los intereses del vehículo SCION y dejaron de enviarle los pagos mensuales y la cuenta de los pagos mensuales es por depósito directo. Se veía en la obligación de coger los pagos porque no podía pagar dos carros.

t. Verificó en Auto Expreso y tiene multas por peaje.

u. No sabe dónde está el vehículo; no sabe quién lo posee.

v. Que no lo dejaban salir del dealer para que aceptara la oferta. (nota: en referencia a dejarle el SCION 2022 para venderlo- véase inciso f y g). Que le hicieron la oferta de ellos quedarse con el vehículo y venderlo.

w. Que no tuvo libertad para irse del dealer; que no lo dejaban salir del dealer para que aceptara la oferta.

x. Que solicita que le salden la cuenta del vehículo SCION TOYOTA 2022 por los daños, pagos realizados e intereses, pagos atrasados, honorarios de abogado.

y. Que la llave se la dio a [Ángel] y que se vendió la llave a otra persona, que lo sabe por tener mensaje de voz de Marcos Reyes diciéndole que se lo vendió a otra persona. Que no hizo trato verbal con Marcos Reyes.

z. Que le pidió a Marcos Reyes información de la persona a quien se lo vendió y para cuando se haría el traspaso.

aa. Que fue al dealer a reclamar pero no estaba [Ángel] Ortega, y no volvió al dealer a procurar por el señor [Ángel] Ortega.

7. Conforme a documento PAGARE - (fecha: 1/marzo/2024) VIC & MIKE ENTERPRISES INC el querellante pagó $197.50 y conforme declarado, le dieron este documento relacionado con la compra del vehículo KIA SOUL 2022. El documento es un pagaré a vencer el 8 de marzo de 2024 y conforme declarado por querellante es por la tablilla y que lo firmó porque le dicen que es una obligación firmarlo.

8. Conforme declarado por [Ángel] Samuel Ortega (Gerente de venta VIC & MIKE AUTO)

    a. Fue quien le consiguió la aprobación y estuvo envuelto en la negociación en la venta con el vehículo KIA SOUL. Es quien trabaja toda financiación de vehículo.
    b. En referencia al vehículo SCION 2022: se tomó la llave del mismo para hacer una tasación (ver millaje-condiciones del vehículo) y ver si se podía traer en "trade in". Según el "Black Book" su precio quedó por debajo (de $ @ $8 mil); no lo pudo traer en "trade-in" en relación a lo que debe con el préstamo del carro.
    c. El vendedor es quien le explica esto al querellante. El vendedor es el portavoz quien le explica al cliente, lo que él expone. Eso se le informó al querellante. Vilmarie Flores es la vendedora quien cerró el negocio KIA SOUL y explicó al querellante este negocio.
    d. La llave siempre estuvo en el escritorio del vendedor. Luego de haber visto el vehículo; la llave se pasa al vendedor. El vendedor Vilmarie Flores le pasó la llave a Marcos Reyes.
    e. En el dealer tenemos un método de consignación, se tiene un Contrato para ello, que se le ofreció al querellante venderle el vehículo, que él mismo le ofreció que se puede quedar con el vehículo; que si el auto se vende; el banco por donde se financee le paga y se le salda la unidad; pero él (querellante) no accedió, no quiso hacerlo. No sé qué fue lo que hizo ni que habló con Marcos Reyes.
    f. Sí el cliente estuvo hasta las 7:00 pm en el dealer.
    g. No sabe dónde está el vehículo SCION 2022, cuando cerró el dealer (refiriéndose al final de la jornada del día), el carro no estaba allí.
    h. Que quieren ayudar al querellante, tratando de conseguirle el vehículo, pero no saben dónde está el vehículo, no tienen nada que ver con ello; que ha entrevistado personas para saber del vehículo.

i. Tienen el programa de consignación que él (querellante) no aceptó.

9. El querellante declaró que lo llamaron del dealer a su teléfono y no contestó, que fue al 11 de noviembre de 2024, que sin querer una conversación quedó grabado en audio del cual surge: "No tenemos nada que ver. No aparece trade in, tampoco en el contrato de compraventa del carro aparece trade-in, y él sabe que el dealer no tiene absolutamente nada que ver; hay algo que él alega en el escrito que él dice como que nosotros nos íbamos a quedar con el carro y a él se le ofreció una consignación; que el cliente estipula los días que va a dejar el carro, pero se le explica pero para eso tiene que dejarlo aquí y firmar un contrato y seguir pagándolo y el no transó por esa opción, no quiso dejar el auto.

Asimismo, mediante la referida determinación, el foro administrativo ordenó a VIC & MIKE AUTO a pagar y saldar en Caribe Federal Credit Union la cantidad de $18,225.78 e intereses, suma correspondiente al balance de cancelación del financiamiento del vehículo de motor Toyota Scion, el cual el señor Santiago Maldonado entregó al concesionario para que, según contratado, fuese vendido, saldado su balance y traspasado al comprador. A su vez, le impuso la suma de $600.00 en concepto de honorarios de abogado y la suma de $300.00 en concepto de "inconvenientes creados" a favor de la parte querellante.

En desacuerdo, VIC & MIKE AUTO presentó *Moción en Solicitud de Reconsideración de Resolución*. Allí señaló que nunca recibió el vehículo en "trade-in" ni participó de la venta del mismo. Alegó que la transacción entre la parte querellante y el señor Marcos Reyes, quien luego fue despedido de su empleo, se realizó fuera del conocimiento y responsabilidad del concesionario.

Transcurrido el término de rigor sin que la agencia recurrida actuara sobre el antedicho petitorio, el 12 de mayo de 2025, VIC & MIKE AUTO recurrió ante este foro revisor mediante *Revisión de Resolución Administrativa*. En esta alega que el foro administrativo cometió los siguientes errores:

Erró el Departamento de Asuntos del Consumidor al interpretar que existía un contrato verbal entre el querellante y el dealer VIC & MIKE AUTO sobre la consignación del vehículo Toyota Scion del año 2022.

Erró el Departamento de Asuntos del Consumidor al imputar responsabilidad al dealer VIC & MIKE AUTO por los actos de Marcos Reyes, quien, según testimonio de la parte querellante, entregó su vehículo de motor Toyota Scion del año 2022 a un tercero, sin que se presentara prueba alguna de que Marcos Reyes actuaba bajo las instrucciones o supervisión del dealer VIC & MIKE AUTO al momento de la entrega del referido vehículo, ni se estableciera que el concesionario se benefició de forma alguna de esta entrega.

Erró el Departamento de Asuntos del Consumidor al establecer el principio de enriquecimiento injusto para declarar ha lugar la querella presentada por Kevin Santiago Maldonado sin que se probara mediante evidencia que VIC & MIKE AUTO recibió pago, comisión o ventaja alguna por la alegada venta del Toyota Scion del año 2022.

Erró el Departamento de Asuntos del Consumidor al establecer que existía una obligación contractual entre VIC & MIKE AUTO y la parte querellante Kevin Santiago Maldonado para aceptar el vehículo de motor Toyota Scion del año 2022 en trade-in y realizar el traspaso del mismo.

Erró el Departamento de Asuntos al Consumidor al ordenar el pago de novecientos dólares en sanciones adicionales a favor de la parte querellante Kevin Santiago Maldonado sin probar mediante evidencia la culpa, negligencia, ni dolo imputado a VIC & MIKE AUTO.

De acuerdo con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, este Foro puede "prescindir de términos no jurisdiccionales, específicos," escritos, notificaciones o procedimientos adicionales, "con el propósito de lograr su más justo y eficiente despacho". Así, prescindimos de la comparecencia del señor Santiago Maldonado.

## II.

### A.

Sabido es que los tribunales apelativos están llamados a otorgar amplia deferencia a las decisiones de las agencias administrativas. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Vélez v. ARPE,* 167 DPR 684, 693 (2006); *Otero v.*

*Toyota*, 163 DPR 716, 727 (2005). Al evaluar la decisión de una agencia, el tribunal debe determinar si ésta actuó de forma arbitraria, ilegal o irrazonable, constituyendo sus actuaciones un abuso de discreción. El criterio rector es la razonabilidad de la agencia recurrida. Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 746 (2012); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).

Así, al momento de evaluar una decisión administrativa, los tribunales tomarán en consideración, no solo la especialización y experiencia de la agencia sobre las controversias que tuviera ante sí, sino que también deben distinguir entre cuestiones relacionadas a la interpretación de las leyes —donde los tribunales son los especialistas— y aquellos asuntos propios para la discreción o pericia administrativa. *García Reyes v. Cruz Auto Corp.*, supra, pág. 892. Véanse, además, *Super Asphalt v. AFI y otros*, 206 DPR 803, 820 (2021); *Capó Cruz v. Jta. Planificación*, 204 DPR 581 (2020); *Román Ortiz v. OGPe*, 203 DPR 947 (2020).

Al aplicar el criterio de razonabilidad y deferencia, se ha dispuesto por la jurisprudencia que los foros apelativos no deben intervenir con las determinaciones de hechos que las agencias formulan, si las mismas están sostenidas por evidencia sustancial que obre en el expediente administrativo.[2] Bajo dicho escenario, los foros apelativos deben sostenerlas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Véase también, *Daco v. Toys "R" Us*, 191 DPR 760, 764 (2014); *Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000).

Ahora bien, debido a que las resoluciones de los organismos administrativos gozan de una presunción de legalidad y corrección,

---

[2] Evidencia sustancial es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Otero v. Toyota*, supra, pág. 728.

quien las impugne tiene el peso de la prueba, por lo que deberá presentar evidencia suficiente para derrotar la presunción que estas poseen. *Transp. Sonell v. Jta. Subastas ACT*, 2024 TSPR 82, 214 DPR ____ (2024); *García Reyes v. Cruz Auto Corp.*, supra, pág. 893; *Pacheco v. Estancias*, 160 DPR 409, 431 (2003). De lo anterior, surge claramente que la carga probatoria le corresponde a la parte recurrente. Si incumple, la decisión administrativa deberá ser respetada por el foro apelativo.

Empero, debemos puntualizar que los tribunales estamos llamados a ejercer un juicio independiente al evaluar las conclusiones de derecho y las interpretaciones que realizan las agencias sobre la ley que le corresponde administrar. En ese sentido, nuestro más Alto Foro pautó que no debemos guiarnos por una deferencia automática sobre las interpretaciones de las agencias administrativas. Ello debido a que es deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025).

**III.**

En el recurso de epígrafe, la parte recurrente impugna la determinación del DACo fundamentado en los siguientes planteamientos de error: 1) que se le imputó responsabilidad sin existir un vínculo contractual entre el querellante y el concesionario; 2) que se le imputó responsabilidad sin que se probara que el señor Marcos Reyes actuó bajo las instrucciones o supervisión del concesionario al momento de entregar el vehículo a un tercero; 3) que se le imputó responsabilidad sin que se probara que el concesionario recibió beneficio alguno por la alegada venta; 4) que no existió obligación contractual entre el concesionario y la parte querellante y; 5) que no procedían las sanciones económicas pues no se probó la culpa, negligencia ni dolo de parte del concesionario.

De la *Resolución* recurrida se desprende que el DACo emitió su determinación basado en la prueba documental que obraba en el expediente del caso, así como en la credibilidad que le merecieran los testimonios vertidos en la vista administrativa. A esos efectos, consignó que el señor Ángel Ortega, la señora Vilmarie Flores y el señor Marcos Reyes, todos empleados del concesionario, estuvieron involucrados en los hechos que dieron lugar a la querella y que, estos actuaron en beneficio de VIC & MIKE AUTO. Así, luego de exponer los hechos del caso, determinó que las actuaciones de las partes configuraron un acuerdo verbal entre VIC & MIKE AUTO y el señor Santiago Maldonado, en virtud del cual una de ellas entregaba y la otra recibía el vehículo Toyota Scion, con el fin de colocarlo en venta en el concesionario, efectuar el traspaso una vez concretada la venta y saldar la deuda con el banco. Además, concluyó que la parte recurrente incurrió en un engaño hacia el señor Santiago Maldonado y que también incumplió lo pactado entre ambas partes, ya que el vehículo fue vendido a un tercero sin haberse realizado previamente el proceso acordado.

Ahora bien, luego de examinar el expediente ante esta Curia constatamos que la parte recurrente no incluyó copia de la transcripción de la prueba oral vertida en la vista administrativa. De forma que, no nos ha colocado en posición para revisar las determinaciones de hechos realizadas por el organismo administrativo. Por lo que, en ausencia de la referida prueba, VIC & MIKE AUTO no presentó ante nuestra consideración prueba suficiente que derrotara la presunción de legalidad y corrección de la decisión recurrida. Siendo ello así, y ante la norma imperante en nuestro ordenamiento jurídico, debemos darle total deferencia a las determinaciones de hechos a las que arribó el DACo.

Cónsono con lo anterior, no podemos concluir que la determinación final del DACo fuera una arbitraria, irrazonable o

contraria a derecho. A esos efectos, procede que confirmemos en su totalidad el dictamen administrativo impugnado.

**IV.**

Por los fundamentos antes esbozados, ***confirmamos*** la *Resolución* emitida el 28 de febrero de 2025 por el Departamento de Asuntos del Consumidor.

Lo acordó el Tribunal y lo certifica la Secretaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones